IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ISAIAS R. ORTIZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  Civ.Act.No. 07-421-*** |
| | ) |
| ELIZABETH BURRIS, Acting Warden[1] | ) |
| and JOSEPH R. BIDEN III, Attorney | ) |
| General for the State of Delaware | ) |
| | ) |
| Respondents. | ) |

**ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In October 2003, the petitioner, Isaias R. Ortiz, was convicted by a New Castle County jury of two counts of trafficking in cocaine, possession with intent to distribute a schedule II narcotic, maintaining a vehicle for keeping controlled substances, maintaining a dwelling for keeping controlled substances, second degree conspiracy, and endangering the welfare of a child. (*See* Del. Super. Ct. Crim. Dkt. No. 0210012072, D.I. 13). Ortiz was subsequently sentenced, in December 2003, to a total of sixty years imprisonment, suspended after fifty-five years for a term of probation. The Delaware Supreme Court affirmed Ortiz's convictions on appeal. *See Ortiz v. State*, 2004 WL 2741185 (Del. 2004)

---

[1] *See* Fed.R.Civ.P. 25(d)(1). Elizabeth Burris was named Acting Warden, effective September 1, 2007.

1

(*Ortiz I*). The Delaware Supreme Court, in *Ortiz I*, described the circumstances of Ortiz's arrest:

> In October 2002, based upon reliable and confirmed information that drugs were being sold from a first floor apartment at 1908 Lancaster Avenue in Wilmington, the Wilmington police obtained a warrant to search that location for drugs. Before executing the search warrant, the police organized a controlled "buy" with a confidential informant, who was known to be reliable, on October 18, 2002. The informant went to the apartment and was told that there were no drugs available, but that he should come back around 7:30 p.m. because someone would be delivering more drugs at about that time. The informant was instructed to wait for the drugs to be delivered and to call the police when the drugs arrived.
>
> Shortly after 7:30 that same evening, the informant called the police officers and told them that he had observed a Dominican male arrive with "a prissy female" and that they had put 13 bags of heroin and a large amount of crack cocaine on the table in the apartment. The informant also told the police that the traffickers were planning to leave soon. Ten minutes later, the police observed a black man, later identified as Ortiz, and a well-dressed female, exit the building. The confidential informant approached Ortiz outside the building and engaged him in conversation. Thereafter, the police then followed the suspects for two blocks and watched them get into a car.
>
> The police stopped the car, detained the suspects, and asked them for identification. Both suspects responded they had none. While searching for identification, one policeman reached into the backseat of the car and removed a jacket, in the pocket of which the officer found a clear plastic bag containing an off-white chunky substance. The police also found money and a set of keys in the car's passenger compartment.
>
> The two suspects were then taken into custody and moved to a staging area while the police executed the search warrant for 1908 Lancaster Avenue. While inside the apartment, the police found bags of heroin and cocaine, and arrested two more people. All four suspects were then taken to the police station.
>
> After learning that Ortiz and his companion lived at 1933 West Fourth Street, the police took the set of keys found in the passenger compartment of the car and determined that they fit Apartment B at 1933 West Fourth Street. The police later obtained a search warrant for that apartment, where, as a result of the search, they discovered cocaine.

2004 WL 2741185 at *1.

In August 2006, Ortiz filed a motion for postconviction relief, which was denied in September 2006. (*See* Del. Super. Ct. Crim. Dkt. No. 0210012072, D.I. 30, 32). The Delaware Supreme Court affirmed the Superior Court's denial of Ortiz's motion for postconviction relief on appeal in January 2007. *See Ortiz v. State*, 2007 WL 188173 (Del. 2007).

## Discussion

In his petition for federal habeas relief, Ortiz raises two grounds for relief: (1) that the evidence seized from his vehicle and home should have been suppressed because the police did not obtain a search warrant before searching his car and because the "tainted" evidence was then used to obtain a warrant to search his home; and 2) that the trial court violated his rights under the Due Process Clause by denying a continuance for Ortiz to obtain an interpreter. As set out below, all of Ortiz's claims are untimely under 28 U.S.C. §2244(d) and, additionally, without merit.

Because Ortiz's petition was filed in September 2006, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law by the President on April 24, 1996. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding the AEDPA applies to "such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d 428, 433 n.1 (D. Del. 1998); *Dawson v. Snyder*, 988 F. Supp. 783, 802-03 (D. Del. 1997). Ortiz's conviction became final on November 16, 2004. Thus, Ortiz's petition must have been filed by February 14, 2005 to be timely. *See* 28 U.S.C. §2244(d)(1). Ortiz's petition, dated June 26, 2007, was obviously filed past the February 2006 deadline. The petition is thus untimely and must be dismissed, unless

the time period can be statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).[2]

In turn, the tolling mechanism of §2244(d)(2) does not save Ortiz's petition from the running of the limitations period. When applicable, §2244(d)(2) tolls the one-year period of §2244(d)(1) during the time that a properly filed state postconviction action is pending in the state courts. Ortiz filed a motion for postconviction relief in August 2006. (*See* Del. Super. Ct. Crim. Dkt. No. 0210012072, D.I. 30). While Ortiz's postconviction motion was timely under state law, it did not act to toll the limitations period because the limitations period had already run. Because Ortiz has filed this federal habeas action more than one year beyond the §2244 bar, it is untimely.

Of course, as the Court has repeatedly noted, the limitation period might be subject to equitable tolling. *See, e.g., Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001). Equitable tolling, however, applies only where the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Here, Ortiz has failed to demonstrate or even allege any extraordinary circumstances that prevented him from filing his petition with the Court in a timely manner. Ortiz has, in fact, never been diligent in asserting his rights – he waited more than a year and a half after his conviction became final to file a motion for postconviction relief, and he waited more than an additional six months to file this action. Ortiz cannot credibly allege that the legal arguments or facts were unavailable to him during the limitations period. In short, Ortiz's claims are untimely under § 2244(d), and there is no basis upon which any relevant time

---

[2] Ortiz does not allege, nor can respondents discern, any reason to believe that the terms of 28 U.S.C. §2244(d)(1)(B)-(D) are applicable to any of Ortiz's claims.

4

should be excluded by virtue of the equitable tolling doctrine. Accordingly, Ortiz is not entitled to relief.

*Claim One: Illegal Search and Seizure*

Ortiz first claims that the evidence seized from his vehicle should have been suppressed because the police did not obtain a search warrant prior to searching his car. (D.I. 3 at 1). Ortiz further claims that, because the evidence seized from his vehicle was tainted by this warrantless search, that the warrant authorizing the search of his home was invalid and that any evidence seized therefrom should also have been suppressed. (D.I. 3 at 4). These claims, however, are not cognizable in federal habeas. "Federal habeas corpus is not available when state prisoners 'have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review…" *United States ex rel. Petillo v. New Jersey*, 562 F.2d 903, 907 (3d Cir. 1977) (*quoting Stone v. Powell*, 428 U.S. 465, 489 (1976)); *Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1993).

At trial, Ortiz moved to have all evidence seized by police from his vehicle and home suppressed "because the police had not obtained a warrant before searching [Ortiz's] vehicle, and because the tainted evidence found in that search was then used to obtain a warrant to search the apartment at 1933 West Fourth Street.". *Ortiz I* at *2. The trial court denied Ortiz's motion. *Id.* Ortiz thereafter presented this claim to the Delaware Supreme Court in both *Ortiz I* and *Ortiz II*. In *Ortiz I*, the Delaware Supreme Court held that the search of Ortiz's vehicle was valid under the "search incident to a lawful arrest" and "vehicle search" exceptions to the warrant requirement. *Id.* Ortiz again presented this claim to the Delaware Supreme Court on appeal from the denial of

5

his motion for postconviction relief. *See Ortiz II*, 2007 WL 188173 (Del. 2007). The court declined to consider the claim, holding that, because Ortiz had presented this claim in *Ortiz I*, review was barred by Delaware Superior Court Criminal Rule 61(i)(4). Given the litigation on the Fourth Amendment issue in the state courts, *Stone* precludes consideration of the point now.

*Claim Two:  Trial Court's denial of his request for a continuance to obtain an interpreter.*

Ortiz next claims that his due process rights were violated when the Superior Court did not grant his request for a continuance, allegedly to find a Spanish-language interpreter, first made on the day of trial. On the day of trial, Ortiz requested that he be granted a continuance to locate a Spanish-language interpreter. Ortiz claims that "although he could speak and understand some or little of the English language, his comprehension of the legal jargon and the terminology's [sic] used in the court of law were too much for him to know what was really being said during his trial hearing." (D.I. 3 at 5-6). In reviewing Ortiz's claim in *Ortiz I*, the Delaware Supreme Court stated:

> Even though the trial date had been scheduled for three months, Ortiz never indicated that he needed an interpreter until the morning the trial was scheduled to begin. Additionally, Ortiz had previously attended a preliminary hearing and suppression hearing without an interpreter, and had met, conferred, and corresponded with his attorney in English on several occasions without complaint.
>
> Upon Ortiz's motion for a continuance, the trial court conducted a hearing and questioned Ortiz, his attorney, and a Department of Corrections officer about Ortiz's ability to understand and speak English. The trial court concluded that Ortiz was able to understand and articulate both concrete and philosophical ideas in English. It is clear from the record that the trial court considered the motion carefully and made a reasonable decision based on the evidence at the hearing. Because the trial judge's decision to deny the motion for continuance was reasoned and deliberate, and did not evidence any resulting injustice to Ortiz, the denial of Ortiz's motion for a continuance was not an abuse of discretion.

*Ortiz I*, 2004 WL 2741185 at *4. Because Ortiz presented this claim to the Delaware Supreme Court in both *Ortiz I* and *II*, it had been properly exhausted. However, because Ortiz's claim is untimely and without merit, he is not entitled to relief.

As explained by the Third Circuit, a federal court's consideration under §2254(d)(1) of a habeas petitioner's claim proceeds in two steps. The court "must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000). *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Werts*, 228 F.3d at 197. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous."). Thus, if the Supreme Court has not established "a clear or consistent path" of jurisprudence for state courts to follow, the prisoner is not entitled to relief. *Lockyer*, 538 U.S. at 72. When looking to Supreme Court precedent, the court "must decide the level of specificity at which [it] decide[s] whether the state decision is contrary to, or unreasonably applies, that precedent. . . . Supreme Court jurisprudence addressing §2254(d)(1) has established that determining the 'clearly established' benchmark should be done on a case-specific level." *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004). Under §2254(d)(1), "the Court views its precedents in their particular factual settings. The touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in the opinion. The 'materially indistinguishable' test

7

presupposes a fact-specific analysis of the Supreme Court case law." *Fischetti*, 384 F.3d at 148 (citing cases).

"If [the court] determine[s] that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then [the court is] required to advance to the second step in the analysis -- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Werts*, 228 F.3d at 197. In performing this inquiry, the court is "not authorized to grant habeas corpus relief simply because [it] disagree[s] with the state court's decision or because [it] would have reached a different result if left to [its] own devices." *Werts*, 228 F.3d at 197. Instead, the state court's application of Supreme Court precedent must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Werts*, 228 F.3d at 197. And as with the inquiry under the "contrary to" prong of the statute, "in analyzing habeas claims for unreasonable application of the law, the Supreme Court has looked at its own baseline precedents through a sharply focused lens." *Fischetti*, 384 F.3d at 149. The decisions of state and lower federal courts are relevant in assessing the reasonableness of the state court decision at issue, but "cases not decided by the Supreme Court do not serve as the legal benchmark against which to compare the state decision." *Fischetti*, 384 F.3d at 149. Finally, in this context, Supreme Court precedent involving the interpretation of federal statutes is not enough; the relevant body of decisional law is that interpreting the federal Constitution. *Early v. Packer*, 537 U.S. 3, 10 (2002) (Court's holdings on non-constitutional issues are not "relevant to the §2254(d)(1) determination"); *Johnson v. Carroll*, 369 F.3d 253, 259-62 (3d Cir. 2004).

The Supreme Court of the United States has never directly addressed whether the Fourteenth Amendment requires a non-English-speaking criminal defendant to be provided with an interpreter. However, in an analogous case, the Court held that the Due Process clause was not offended where trial testimony was not communicated to a largely deaf defendant. In *Felts v. Murphy*, 201 U.S. 123 (1906), the Court was presented with the case of George Felts, a man "convicted of the crime of murder and sentenced to imprisonment for life, although he did not hear a word of the evidence that was given upon his trial, because of his almost total deafness...." *Felts*, 201 U.S. at 128. The Court ruled that Felts was not deprived of his rights under the Fourteenth Amendment. *Id.* at 129-30.

Ortiz simply cannot demonstrate that the result reached by the state courts on this claim was clearly contrary to the Supreme Court's holding in *Felts*. Even assuming, *arguendo*, that the Due Process clause requires an interpreter to be provided to a non-English-speaking defendant, Ortiz has failed to show, aside from his mere assertion, that he was so disadvantaged. As noted by the Delaware Supreme Court, Ortiz proceeded through multiple court proceedings before the day of trial, including consultations with counsel, a preliminary hearing, and a suppression hearing "without complaint" before first requesting an interpreter. *Ortiz I*, 2004 WL 2741185 at *4. According to Ortiz's attorney, he had no difficulty communicating with him. (D.I.3 at 12). Ortiz, himself, was able to answer the trial court judge's questions about his English-speaking ability without difficulty. (D.I. 3 at 12-3, 19-22). Ortiz's claim that he did not speak English, therefore, was simply not credible. Because Ortiz cannot show that the result reached by the state

9

courts was "clearly contrary to" Supreme Court precedent or even factually accurate, he is not entitled to relief.

Conclusion

Based upon a review of the record, it appears that transcripts of Ortiz's suppression hearing, trial, and sentencing have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

|  |  |
|---|---|
|  | /s/ James T. Wakley |
|  | Deputy Attorney General |
|  | Department of Justice |
|  | 820 N. French Street |
|  | Wilmington, DE 19801 |
|  | (302) 577-8500 |
| DATE: December 21, 2007 | Del. Bar. ID No. 4612 |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2007, I electronically filed the attached documents with the Clerk of Court using CM/ECF. I also hereby certify that on December 26, 2007, I mailed, by United States Postal Service, the same documents to the following non-registered participant:

Isaias R. Ortiz
SBI # 00480744
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date:  December 21, 2007